**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION FILE** |
| **v.** | **No. 1:22-CR-00414-SCJ-RDC** |
| **MICHAEL DWAYNE BANKS,** | |
| **Defendant.** | |

## <u>ORDER</u>

The matter is before the Court on the July 5, 2024 Report and Recommendation ("R&R") issued by the Honorable Regina D. Cannon, United States Magistrate Judge. Doc. No. [75]. In the R&R, Judge Cannon recommended that Defendant's Motion to Suppress Statements and Evidence (Doc. No. [51]) be denied. Defendant objected to the R&R (Doc. No. [79]) and the Government responded to Defendant's objections (Doc. No. [82]). The matter is ripe for review and addressed below.

## I.    SUMMARY OF THE R&R & OBJECTIONS THERETO

The R&R provides the relevant factual and procedural background (Doc. No. [75], 2–22), and the Court does not reiterate it here.

The Indictment charges Defendant with offenses involving the distribution of controlled substances and firearm possession in connection with those offenses. Doc. No. [24]. Defendant seeks to suppress evidence obtained by law enforcement officers during a protective sweep and subsequent search of the 5447 Big Horn Pass residence (the suspected "stash house") and from his cellphones.

Regarding Defendant's Motion to Suppress, Judge Cannon concluded as follows: **(1)** Officer Jackson's questioning of Defendant about his knowledge of who was present at the Big Horn Pass residence **after** Defendant was properly advised of his <u>Miranda</u> rights and **after** he unequivocally invoked his right to have counsel present was an "interrogation" because a reasonable officer should have known that any questions related to Defendant's knowledge of others residing in the suspected stash house would likely elicit an incriminating response" (Doc. No. [75], 27); **(2)** Officer Jackson's post-<u>Miranda</u> interrogation of Defendant did not violate the Fifth Amendment because Defendant's uncounseled statement was obtained in the absence of a threat or an enticement or "any other aggravating circumstances suggesting coercion" (Doc. No. [75], 28

2

(quoting United States v. Castaneda-Castaneda, 729 F.2d 1360, 1363 (11th Cir. 1984)) and, thus, was "a voluntary, knowing, and intelligent waiver of his privilege against self-incrimination and his right to counsel" (Doc. No. [75], 23); **(3)** even if Defendant's post-Miranda statement was involuntary, it does not require the suppression of evidence seized during a subsequent "knock-and-talk" at the Big Horn Pass residence that Defendant was questioned about because officers had already decided to conduct the knock-and-talk before Defendant's post-Miranda statement and, thus, the interrogation was not the "but for" cause of the subsequent observation and seizure of incriminating evidence; **(4)** there is no cause to suppress the evidence seized during the knock-and-talk for the alternative reason that its discovery was inevitable; **(5)** the officers' protective sweep and subsequent search of the Big Horn Pass residence did not infringe the Fourth Amendment because "the occupants' evasiveness [upon the officers' approach and identification] coupled with the conspirators' apparent retrieval of narcotics from the [Big Horn Pass] residence moments before the drug transaction led officers to reasonably conclude that the occupants were potentially destroying incriminating evidence" and presented an

3

exigent circumstance that was not unlawfully manufactured; and **(6)** the affidavit for the search warrants for the Big Horn Pass residence and Defendant's cellphones was supported by probable cause because **(a)** with regard to the Big Horn Pass residence, the affidavit detailed drug transactions, including one involving the residence, supplied a reason why officers believed marijuana was being stored there, and contained (undisputed) statements about the firearms and at least a small amount of marijuana seen in plain view during the sweep of that residence and **(b)** with regard to the cell phones, the affidavit explained that Defendant had two cellphone in his possession during the second drug transaction and that multiple individuals had communicated with the undercover officer via cell phone to coordinate the drug transaction.

Defendant objects to the R&R. First, Defendant argues suppression is justified because Officer Jackson continued to interrogate him **after** he had invoked his right to remain silent represented a "big" coercive element absent in the cases upon which the R&R relies. Second, Defendant objects to the R&R's conclusion that the officers' decision to conduct the knock-and-talk was not influenced by Defendant's statement. Third,

Defendant argues for suppression on the basis that the knock-and-talk was not the officers' prelude to a proper consent search but rather a means of creating an exigency that would justify a warrantless intrusion. Fourth, Defendant objects to the R&R's conclusion that the sweep and subsequent search of Big Horn Pass residence did not violate the Fourth Amendment, arguing that the residence's occupants' exercise of their right to not engage in a knock-and-talk by not coming to the door and by looking at the officers and walking away did not create an exigent circumstance warranting intrusion. Finally, Defendant asserts that the affidavit in support of the warrant to search his cellphones were not supported by probable cause because had the magistrate judge who signed the warrant known that (1) the affiant "was fudging the facts of what he found in plain view" during the sweep at the Big Horn Pass residence and (2) the officers performed a full-scale search of the residence (rather than just a security sweep lasting a few minutes), these facts might have tainted the magistrate judge's credibility assessment regarding other facts supporting probable cause and they indicate that "[n]othing about this search was conducted in good faith[.]" Doc. No. [79], 12.

## II.     LEGAL STANDARD

The Court must conduct a *de novo* review of those portions of the R&R

to which a defendant has timely and specifically objected. 28 U.S.C.

§ 636(b)(1). The Court may accept, reject, or modify, in whole or in part, the

findings and recommendations made by the Magistrate Judge. Id.

For a party's objections to warrant *de novo* review, the party "must

clearly advise the district court and pinpoint the specific findings that [the

party] disagrees with." United States v. Schultz, 565 F.3d 1353, 1360 (11th

Cir. 2009). The "[p]arties filing objections to a magistrate's report and

recommendation must specifically identify those findings objected to.

Frivolous . . . objections need not be considered by the district court."

Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988). The remainder of

the R&R, to which neither party offers specific objections, will be assessed

for clear error only. See Tauber v. Barnhart, 438 F.Supp.2d 1366, 1373 (N.D.

Ga. 2006).

## III.   ANALYSIS

The Court has reviewed the R&R and Defendant's objections. Having conducted a *de novo* review, the Court concludes that Defendant's objections are due to be sustained-in-part and overruled-in-part.

The Court agrees with the Magistrate Judge that Officer Jackson's questioning of Defendant about his knowledge of who was present at the Big Horn Pass residence **after** Defendant was properly advised of his Miranda rights and **after** he unequivocally invoked his right to have an attorney present was an "interrogation." However, considering the circumstances at issue, the undersigned disagrees with the Magistrate Judge's conclusion that the interrogation did not violate the Fifth Amendment.

While Officer Jackson's post-Miranda conversation suggests that the officer was attempting to "persuade (or 'cajole')" Defendant into answering, and he did not threaten or entice Defendant into making the statement, (Doc. No. [75], 27–28), the fact remains that Defendant had already asked for counsel. The cases that the Magistrate Judge references for the proposition that a statement obtained in a post-Miranda interrogation may

7

nonetheless be considered voluntarily obtained absent aggravating circumstances indicating coercion (i.e., United States v. Castaneda-Castaneda, 729 F.2d 1360, 1363 (11th Cir. 1984); United States v. Middleton, 245 F. App'x 867, 871–72 (11th Cir. 2007)), are distinguishable. In each case, while the officers continued to question the defendant(s) after the reading of the Miranda warnings, the defendant(s) had not invoked the right to remain silent or to counsel's presence. In fact, in Castaneda-Castaneda, one of the defendants waived his Miranda rights but argued that his post-Miranda confession was involuntary because the officer had used an "interrogation trick" (falsely telling him that his co-defendant wife had confessed). 729 F.2d at 1362. The other defendant (the wife of the confessing defendant), who had been read her Miranda rights but had not invoked her right to remain silent or to counsel's presence, confessed once she was told of her husband's confession. Under those circumstances, the Eleventh Circuit concluded that although trickery was used, the interrogation was "sufficiently free of coercive elements to render their confessions voluntary." In Middleton, the defendant "made a voluntary statement-admitting ownership of the gun-after he had been

8

given <u>Miranda</u> warnings, and . . . he did not request counsel until after he

made that statement[.]." Under those circumstances, the police's use of a

trick to obtain the statement did not render it involuntary. 245 F. App'x at

871. The situation here is different.

Once Officer Jackson finished reading Defendant his <u>Miranda</u> rights,

Defendant responded that "he wanted a lawyer present before being

questioned." Doc. No. [65], 51:20–15. "The invocation of the right to counsel

requires the police to cease interrogation until an attorney is present or the

suspect voluntary reinitiates questioning." <u>Everett v. Sec'y, Fla. Dep't of

Corr.</u>, 779 F.3d 1212, 1246 n.18 (11th Cir. 2015) (citing <u>Edwards v. Arizona</u>,

451 U.S. 477, 484 (1981)).

> The <u>Edwards</u> rule involves two separate inquiries: first,
> whether the accused actually invoked his right to counsel; and
> second, if the accused invoked his right to counsel, courts may
> admit his responses to further questioning only on finding that
> he (a) initiated further discussions with the police, and (b)
> knowingly and intelligently waived the right he had invoked.

<u>Everett</u>, 779 F.3d at 1241. Here, there is no dispute that upon being read his

<u>Miranda</u> rights, Defendant asked for counsel before being questioned. Doc.

No. [75], 6, 24. And although he responded to Officer Jackson's questions

thereafter, Defendant himself did not reinitiate questioning after invoking

9

his right to counsel. See Doc. Nos. [75], 6; [65], 52–53. After Defendant invoked his right to counsel, Officer Jackson left Defendant and approached another suspect, who also invoked his right to counsel. Id. At that point, Officer Jackson consulted with fellow officers and then again approached Defendant and informed him of the decision to conduct a knock-and-talk at the Big Horn Pass residence. Id. When Defendant asked to call his girlfriend, Officer Jackson attempted to obtain information from Defendant about who was at the Big Horn Pass residence. Id. Under these circumstances, it cannot be said that Defendant initiated further discussions with the officers. Thus, Officer Jackson's interrogation of Defendant in the absence of counsel violated Defendant's Fifth Amendment rights. Edwards, 451 U.S. at 484, ("[W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights.").

Nevertheless, the Court overrules Defendant's objections against the suppression of evidence obtained subsequent to the post-Miranda statement. Defendant's objects to the R&R, contending that the conclusion

that the officers' decision to conduct the knock-and-talk was not "fruit of the poisonous tree" was incorrect. According to Defendant, the officers determined that it was safe to conduct the knock-and-talk after learning from Defendant's post-<u>Miranda</u> interrogation that only Defendant's girlfriends was at the Big Horn Pass residence. The argument is that because unconstitutionally obtained information was used to conduct the knock-and-talk, the evidence subsequently obtained from the sweep and search of the  Big Horn Pass residence must be suppressed. However, this Court agrees with the Magistrate Judge's conclusion that the officers had already decided to conduct the knock-and-talk and, while they sought information from Defendant about who was present at the Big Horn Pass residence (in part) to assess safety concerns, nothing indicates that their decision was subject to change based on Defendant's response.[1]

---

[1] Officer Tooley testified that while there was no basis to believe that Defendant had lied when he said that his girlfriend was the only one at the Big Horn Pass residence and that "[i]f we know that there are ten people with guns in the house, I'm not going to take my group to the house and potentially run into an emergency situation" (Doc. No. [64], 135:2–19; 136:2–11), he also answered "no, sir" in response to the question whether Defendant's statement that only his girlfriend was at the house was the only thing that led to the knock-and-talk. Doc. No. [64], 135:23–136:1.

The Court also overrules the remainder of Defendant's objections. **First**, the Court is unpersuaded by Defendant's argument that the knock-and-talk was a ruse to facilitate an unconstitutional search. Defendant contends that the fact that (1) the officers were aware that Defendant lived at the Big Horn Pass residence (based on Defendant's post-<u>Miranda</u> request for the officers to get him socks and underwear from the residence) but (2) did not inform him that their purpose for the knock-and-talk was to seek consent to search the residence and (3) went to the residence without knowing whether anyone there (e.g., Defendant's girlfriend) had standing to give consent shows that the officers were hoping to create an exigency that would justify an intrusion. Defendant maintains that he had a right to know that the true purpose of the knock-and-talk was to conduct a search because "his objection would have negated the legality of such consent search." Doc. No. [79], 7.

However, Defendant points to no authority indicating that, under the circumstances, his refusal to consent to a search would negate any consent obtained from another resident of the Big Horn Pass residence. Defendant's reliance on <u>Georgia v. Randolph</u>, 547 U.S. 103 (2006), is unavailing. In

12

Randolph, the Supreme Court held that "a *physically present* co-occupant's stated refusal to permit entry renders warrantless entry and search unreasonable and invalid as to him." 547 U.S. at 106 (emphasis added). The Randolph Court drew a "fine line," explaining that "[s]o long as there is no evidence that the police have removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection, there is practical value in the simple clarity of complementary rules, one recognizing the co-tenant's permission when there is no fellow occupant on hand, the other according dispositive weight to the [physically present] fellow occupant's contrary indication when he expresses it." Id. at 121–22. Here, Defendant does not contend that he was physically present at the Big Horn Pass residence when the officers went to conduct the knock-and-talk and thus was in a position such that his refusal to give consent for a search would have overcome a co-resident's consent. Also, nothing in the record indicates that law enforcement removed him from the residence for the purpose of avoiding his potential refusal.[2]

---

[2]  In fact, Defendant was arrested in a church parking lot that was a short distance from the Big Horn Pass residence after he drove away from the residence (for a second time). Doc. No. [65], 27–41.

13

In Defendant's absence, a co-resident of the Big Horn Pass residence could have consented to the officers' request to search. United States v. Matlock, 415 U.S. 164, 171 (1974) ("[W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected."). And the Court is not persuaded that the officers' approach was impermissible or suspect because they went to the residence without first determining that someone present there would have the apparent authority to consent to a search of the place. Thus, Defendant has not shown that knock-and-talk was a ruse to facilitate an exigent circumstance for a warrantless search.

**Second**, the Court overrules Defendant's objection to the R&R's conclusion that the protective sweep and search of the Big Horn Pass residence did not infringe the Fourth Amendment. Defendant argues that the officers went to the Big Horn Pass residence with the (improper) purpose of creating an exigency and forced their way into residence simply

14

because Defendant's girlfriend refused to answer the door and another person walked upstairs after seeing the officers. The Court, however, agrees with the Magistrate Judge's well-reasoned conclusion that *bona fide* exigent circumstances warranted the officers' breach and that the protective sweep of the residence did not violate the Fourth Amendment.

**Third**, the Court overrules Defendant's objection that the affidavit supporting the warrant to search Defendant's phones was not supported by probable cause. Defendant contends that the affiant mischaracterized what was found at the Big Horn Pass residence during the protective sweep. Defendant argues that had the magistrate judge signing the warrant known of the mischaracterizations, that knowledge might have affected the judge's credibility assessment regarding the other (uncontroverted) facts supporting probable cause. The Court agrees with the R&R's conclusion that, even setting aside the alleged mischaracterizations, the affidavit contained sufficient information to support probable cause. And although Defendant argues that knowledge of the mischaracterizations might have caused the magistrate judge issuing the warrant to question the trustworthiness of the other facts in the affidavit, there is nothing to indicate

15

that those facts were also suspect such that they were in capable of supplying probable cause for the search warrant. Defendant also argues that the officers conducted a far more invasive search before getting the search warrant. Pointing to photograph metadata, Defendant asserts that the government's photographs show that during the security sweep the officers were "pilfering far beyond anything justified for a security sweep" and did not secure the warrant until hours later. However, Defendant fails to explain how the officers' alleged "pilfering" negated the probable cause for the search warrant. To the extent Defendant's argument is that the officers' alleged behavior undermines the affiant's credibility, the Court remains unpersuaded for the reason discussed above.

In sum, although the Court sustains Defendant's objection to the R&R's conclusion that Officer Jackson's post-Miranda interrogation of Defendant did not violate the Fifth Amendment, for the reasons discussed above, suppression of the subsequently obtained evidence is not warranted. The Court also concluded that the search warrant affidavits were supported by probable cause. Thus, as recommended by Magistrate Judge Cannon, the instant Motion is due to be denied.

16

## IV.   CONCLUSION

For the above-stated reasons, with the exception of the R&R's conclusion that Defendant's post-Miranda interrogation did not violate the Fifth Amendment, the Court **ADOPTS** the R&R as the Order of this Court. Defendant's Motion to Suppress (Doc. No. [51]) is **DENIED**. Defendant's objections (Doc. No. [79]) are **SUSTAINED-IN-PART and OVERRULED-IN-PART**.

IT IS SO ORDERED this __11th__ day of September, 2024.

HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE